UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL UNION, UNITED
AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF
AMERICA, *et al.*,

               Plaintiffs,

     v.

UNITED STATES DEPARTMENT OF STATE,
*et al.*,

               Defendants.

25 Civ. 8566 (AKH)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2663
E-mail: jennifer.jude@usdoj.gov

JENNIFER JUDE
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................1

I.    The Channeling and Jurisdiction-Stripping Provisions of
8 U.S.C. 1252(b)(9), (g), and (f)(1) Deprive This Court of Subject Matter
Jurisdiction ..............................................................................................................1

II.    Plaintiffs Lack Associational Standing .....................................................................4

    A.    Plaintiffs Have Not Shown That Any Union Member Has an Ongoing
Injury .........................................................................................................4

    B.    Plaintiffs Have Not Shown That Any Union Member Has a Sufficient
Risk of Future Injury ...................................................................................8

    C.    Plaintiffs Fail to Satisfy the Germaneness Requirement .............................9

II.    Plaintiffs Lack Organizational Standing ..................................................................10

CONCLUSION ........................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                          **PAGE(s)**

*American Association of University Professors v. Rubio*,
802 F. Supp. 3d 120 (D. Mass. 2025) ................................................................ 11

*Aebisher v. Ryan*,
622 F.2d 651 (2d Cir. 1980) ................................................................................. 5

*Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc.*,
448 F.3d 138 (2d Cir. 2006) ................................................................................. 9

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) ............................................................................................. 4

*Conn. Parents Union v. Russell-Tucker*,
8 F.4th 167 (2d Cir. 2021) ................................................................................. 12

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ............................................................................................. 8

*DeBlasio v. Merrill Lynch & Co.*,
2009 WL 2242605 (S.D.N.Y. July 27, 2009) ....................................................... 5

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ................................................................................................. 3

*FDA v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024) ........................................................................................... 11

*Fisk v. Letterman*,
401 F. Supp. 2d 362 (S.D.N.Y. 2005) .................................................................. 5

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ............................................................................................. 4

*Int'l All. of Theater Stage Emps. Loc. 927 v. Fervier*,
2025 WL 747513 (N.D. Ga. Mar. 7, 2025) ........................................................ 10

*Khalil v. President*,
164 F.4th 259 (3d Cir. 2026) ............................................................................... 2

*Laird v. Tatum*,
408 U.S. 1 (1972) ................................................................................................. 6

*Lewis v. Casey*,
518 U.S. 343 (1996) ................................................................................................. 8

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025) ................................................................................... 2

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025) ............................................................................... 4

*Murthy v. Missouri*,
603 U.S. 43 (2024) ................................................................................................... 8

*Nat'l Rifle Ass'n of Am. v. Vullo*,
602 U.S. 175 (2024) ............................................................................................. 5, 6

*Ozturk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) ................................................................................ 2, 3

*Pen Am. Ctr., Inc. v. Trump*,
448 F. Supp. 3d 309 (2020) ..................................................................................... 4

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) ................................................................................................. 3

*Upsolve, Inc. v. James*,
155 F.4th 133 (2d Cir. 2025) ................................................................................... 9

**STATUTES**

8 U.S.C. 1252(b)(9) .......................................................................................... i, 1, 2

8 U.S.C. 1252(f)(1) ................................................................................................... 3

8 U.S.C. 1252(g) ...................................................................................................... 3

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ................................................................ 1

Defendants the U.S. Department of State ("State"); the U.S. Department of Homeland Security ("DHS"); United States Citizenship and Immigration Services ("USCIS"); U.S. Immigration and Customs Enforcement ("ICE"); the head of each agency; and the United States (collectively, the "Government"), respectfully submit this reply memorandum of law in further support of their motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1), ECF No 51.

**PRELIMINARY STATEMENT**

The Court should grant the Government's motion to dismiss the FAC for two reasons.[1] First, Plaintiffs' broad request for an order enjoining the so-called CSP interferes with the administration of the immigration laws in a manner that runs afoul of three separate provisions of the Immigration and Nationality Act: 8 U.S.C. §§ 1252(b)(9), (g), and (f)(1). Second, Plaintiffs have not shown that they have either associational or organizational standing to bring their claims. Plaintiffs have failed to show that any individual union member has suffered ongoing injuries or faces an imminent and credible threat of enforcement under the CSP. Plaintiffs also cannot sue on behalf of their members because the aims of this lawsuit are not germane to Plaintiffs' areas of expertise. And Plaintiffs do not have organizational standing because they have suffered no cognizable injury as a result of the CSP, either an impairment of their ability to carry out their core missions or the need to divert material resources away from their usual activities to respond to the effect of the CSP.

---

[1] Terms not defined herein have the definitions given to them in the Government's opening brief. ECF No. 52 ("Br.").

1

**ARGUMENT**

**I.     The Channeling and Jurisdiction-Stripping Provisions of 8 U.S.C. 1252(b)(9), (g), and (f)(1) Deprive This Court of Subject Matter Jurisdiction**

The Court does not have subject matter jurisdiction over this action because of the channeling and jurisdiction-stripping commands of 8 U.S.C §§ 1252(b)(9), (g), and (f)(1). Plaintiffs argue that these provisions do not apply to this case because Plaintiffs are challenging "the Government's upstream program of viewpoint-discrimination surveillance and coercion" and not "any removal orders or proceedings." ECF No. 58 ("Opp.") 4. But that ignores the breadth of these provisions and the relief Plaintiffs are seeking.

**8 U.S.C. 1252(b)(9).** Plaintiffs argue that Section 1252(b)(9) is inapposite because it only applies to the review of orders of removal. Opp. 4. But the language of the statute is much broader—it covers judicial review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). Plaintiffs seek to enjoin the Government from implementing the CSP, including by removing and otherwise taking "adverse immigration action" against their members, *see* FAC ¶¶ 8, 11, 33, 59, 65-66, 110, 296, prayer for relief. Accordingly, Plaintiffs' case raises questions of law and fact concerning "action[s] taken . . . to remove" aliens from the United States. 8 U.S.C. § 1252(b)(9). While the Second Circuit disagreed with the Government's reading of Section 1252(b)(9) in *Ozturk v. Hyde*, 136 F.4th 382, 399-400 (2d Cir. 2025) and *Mahdawi v. Trump*, 136 F.4th 443, 451-52 (2d Cir. 2025), neither of those cases sought to broadly enjoin the Government from taking any adverse immigration action against certain individuals, which necessarily interferes with removal proceedings.    *See Khalil v. President*, 164 F.4th 259, 274-75 (3d Cir. 2026). Plaintiffs do not dispute that any of their members would be able to obtain meaningful review of their First

Amendment claims on a petition for review of their removal proceedings to the relevant court of appeals. *Id.*

**8 U.S.C. 1252(g).** For a similar reason, Section 1252(g) divests this Court from jurisdiction over this case. Plaintiffs argue that Section 1252(g) preclusion is limited to three discrete categories of claims and does not reach "other decisions and actions," including those related to investigating and surveilling aliens. *See* Opp. 6 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AAADC*"), 525 U.S. 471, 482 (1999)). But again, Plaintiffs are seeking an order enjoining the Government from taking adverse immigration actions against their members, which necessarily includes the commencement of removal proceedings and the execution of removal orders, two of the enumerated Section 1252(g) categories. This requested relief brings this case squarely within the ambit of Section 1252(g). *See AAADC*, 525 U.S. at 487. The claims in this case are neither "independent of, or wholly collateral to, the removal process," *Ozturk*, 136 F.4th at 397, where they might block that process altogether. Nor is this case similar to *DHS v. Regents of the Univ. of Cal.*, to which Section 1252(g) did not apply because that case concerned the revocation of "a deferred action program with associated benefits," and not "a decision to 'commence proceedings,'" 591 U.S. 1, 19 (2020).

**8 U.S.C. 1252(f)(1).** Finally, Section 1252(f)(1) bars Plaintiffs' request for injunctive relief in this case. Plaintiffs argue that this provision does not apply to their request for "an injunction ordering the Government to desist from unlawful viewpoint-based surveillance and coercive threats," which they argue "has nothing to do with the *operation* of removal proceedings" and thus does not fall within the scope of Section 1252(f)(1). Opp. 8-9. But Plaintiffs ask the Court to enjoin Defendants "from implementing the [CSP]," FAC at prayer for relief, and they defined the "CSP" as encompassing the "tak[ing] of adverse immigration action" against aliens in their complaint, *id.*

3

¶ 11. Section 1252(f)(1) "generally prohibits . . . injunctions that order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out" the INA's removal provisions (except in circumstances not applicable here). *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022). Plaintiffs cannot avoid the fact that their own definition of the Government's supposed "Program" brings this case directly within Section 1252(f)(1)'s scope.[2]

## II.    Plaintiffs Lack Associational Standing

Plaintiffs have not demonstrated that any of their members has standing as a result of either an "ongoing" injury or a credible threat of future enforcement.

### A.  Plaintiffs Have Not Shown That Any Union Member Has an Ongoing Injury

Plaintiffs argue that their members have suffered "numerous injuries-in-fact" because the FAC alleges that "their members are *currently* being surveilled and threatened under the CSP." Opp. 10. They identify four types of alleged ongoing injuries, which correspond to their four First Amendment claims. But Plaintiffs fail to demonstrate that any union member has suffered any of these specific harms.

**Viewpoint Discrimination.** First, Plaintiffs argue that their members are injured by being subject to viewpoint discrimination (or the risk of such discrimination). *See* Opp. 11-12; *see also* FAC ¶¶ 304-14. However, this is not the case if they are not "targets" of or "subject to" the alleged CSP to begin with. *See* Opp. 12 (citing *Media Matters for Am. v. Paxton*, 138 F.4th 563, 580 (D.C. Cir. 2025) ("targets") and *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755 (1988) ("subject to")). Plaintiffs do not identify specific union members who are, in fact, subject to the

---

[2] Plaintiffs argue that a footnote in *Garland* stands for the proposition that Section 1252(f)(1) "does not sweep in orders with a 'collateral effect' on the operation of the INA's removal procedures." *See* Opp. 8 (citing *Garland*, 596 U.S. at 553 n.4). But that footnote merely summarized the arguments of one of the parties on what it called an "unresponsive proposition" and did not describe the position of the Court on that issue.

CSP. *See* Opp. 13-15. And while a chilling effect on speech can itself be an injury, that is only the case if there is a "a claim of specific present *objective* harm." Opp. 12 (quoting *Pen Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 321 (2020) (emphasis added). As Plaintiffs recognize, such a chilling effect exists "when plaintiffs are in fact surveilled," Opp. 13—and not when they are not being surveilled. But as the Government has shown, *see* Br. at 6-7, 22, Plaintiffs' allegation that "the Government is surveilling all aliens who are already in the United States," Opp. 13 (cleaned up), is not well pled. While Plaintiffs argue that the Government's argument amounts to an "improper factual challenge" in a motion to dismiss, Opp. 11, the Government is not presenting any of its own contrary evidence at this stage. Rather, it is relying on materials cited in or integral to the FAC and deemed to be incorporated into it, *see* Br. at 5 n.3. Where those materials contradict Plaintiffs' allegations, those allegations are not entitled to be deemed as true for purposes of the motion to dismiss. *See Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).[3]

**Coercive Threats.** Plaintiffs also have failed to show that their members have been subject to coercive threats that would give rise to constitutional injuries. *See* FAC ¶¶ 315-23. To state a "coercive threats" claim, "a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024). That is, statements only give rise to such a claim if, applying an "objective inquiry," "a reasonable person would perceive the official's communication as coercive." *Id.* The cases that Plaintiffs cite

---

[3] Similarly, the Court is not required to accept as true Plaintiffs' allegation that all visa holders were subject to the CSP as of August 2025, which, as the Government explained in its opening brief, Br. 6-7, is contradicted by Plaintiffs' separate allegation that in December 2025, State expanded the visa holder categories subject to surveillance. *See DeBlasio v. Merrill Lynch & Co.*, No. 07CIV318RJS, 2009 WL 2242605, at *26 (S.D.N.Y. July 27, 2009) ("Because this broad contention sits in significant tension with Plaintiffs' other allegations in the SAC, the Court is not obligated to accept it as true.").

concern specific threats made to specific targets. *See* Opp. 15-16 (citing *Aebisher v. Ryan*, 622 F.2d 651, 655 (2d Cir. 1980) (school district issued reprimand letters to two teachers) and *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 198 (2024) (state regulatory body actions targeting NRA and other "gun groups")). Plaintiffs identify no specific union member or members who have been subject to targeted threats.[4] Although Plaintiffs cite to examples of government statements claiming surveillance of "everyone," *see* Opp. 16, it is not objectively reasonable for "everyone" or even all aliens present in the United States to perceive these as threats of adverse government action. Nor does the fact that the Government has allegedly "made a very public example out of" a handful of individuals, *see* FAC ¶¶ 157-92, mean that all other aliens have been credibly threatened. And that is certainly not the case where, as discussed above, the FAC does not plausibly allege that all aliens are subject to the so-called CSP.

**Social Media Accounts Policy.** Plaintiffs concede that they have identified only two union members—CWA Doe 6 and AFT Doe 7—who are subject to the social media accounts aspect of the alleged CSP, *i.e.*, the requirement that certain individuals set their social media profiles to public when applying for visas or submit all social media identifiers they have used in the past five years when applying for immigration benefits. *See* Opp. 18 (citing FAC ¶¶ 238 (CWA Doe 6), 256 (AFT Doe 7)). However, based on the allegations in the FAC, neither of these members has standing. While CWA Doe 6 is concerned about a potential denial of their citizenship application,

---

[4] *First Choice Women's Resource Centers, Inc. v. Davenport*, No. 24-781 (U.S. Apr. 29, 2026), the recent Supreme Court decision addressed in Plaintiffs' May 4, 2026 supplemental authority letter, ECF No. 65 at 1, supports this distinction. In *First Choice*, the Court explained that the fact that the plaintiff had been specifically "targeted for . . . investigation" by the government supported its argument that it had suffered an objectively reasonable chill of its First Amendment rights. Slip op. at 16. The Court contrasted this with the facts of the seminal standing case *Laird v. Tatum*, in which "the plaintiffs alleged that their rights were chilled not by any specific action against them but by the mere existence without more of a government program they thought was inappropriate or dangerous." *Id.* (citing *Laird v. Tatum*, 408 U.S. 1 (1972)) (cleaned up).

they have not made their social media accounts public; rather, they did the opposite—changing at least one account from public to private, and deleting another account. FAC ¶ 238. And the allegations in the FAC concerning AFT Doe 7 do not address social media (or online behavior) at all, instead alleging only that the CSP "has caused [this member] to alter their union activities and their *non*-social-media activity." *Id.* ¶ 256 (emphasis added). It is not clear that this member, who is specifically noted to be a retiree, has or ever had any social media accounts. *See id.* Plaintiffs do identify one additional union member, AFT Doe 8, as someone who has "refrained from applying for USCIS immigration benefits as a result of the CSP's social media disclosure requirements." Opp. 18 (citing FAC ¶ 257). As Plaintiffs acknowledge, however, they must allege that one of their members was, in fact, "deter[ed] . . . from applying for benefits when they otherwise would have," *id.* (citing *Antonyuk*, 120 F.4th at 977-78). Here, Plaintiffs do not allege that AFT Doe 8 intended to apply for USCIS immigration benefits prior to the alleged CSP, *see* FAC ¶ 257.

**Receipt of Speech.** Plaintiffs also allege that their members have been injured by "the CSP's unlawful interference with their right to receive information from other members." Opp. 18. But there are hardly any factual allegations concerning this supposed injury in the FAC. The paragraphs of the FAC that Plaintiffs cite in their opposition brief either (i) allege that union members have limited their own speech or (ii) address Plaintiffs' alleged organizational injuries. *See* Opp. 19 (citing FAC ¶¶ 203, 239-40, 290, 292, 313, 322, 331, 340). Indeed, the only paragraph in the FAC that addresses harm to union members from not *receiving* information merely asserts that unknown "social media accounts" that some members had "previously relied upon for information had stopped or reduced posting content." FAC ¶ 229. This paragraph does not describe any injury that this caused to any particular member. Further, it is not clear that this paragraph even addresses the specific injury at issue—the interference with union members' "right to receive

7

information from other members," Opp. 18—as it does not state that the "social media accounts" that allegedly stopped or reduced posting even belonged to union members, *see* FAC ¶ 229.

As the Government previously stressed, *see* Br. 19, 21, 23, Plaintiffs are required to "demonstrate standing for each claim they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (cleaned up). Therefore, to the extent that they are able to demonstrate that they have a member who has suffered one of the above injuries, only the corresponding claim may survive and only against whichever specific defendant agency is alleged to have harmed that member.[5] *See id.* Plaintiffs attempt to avoid this result by characterizing the Supreme Court's *Murthy* decision as limited to cases in which the Government is alleged to have indirectly suppressed speech through third parties. *See* Opp. 21 & n.12. But the principle that a plaintiff must demonstrate standing for each claim, for each defendant, and for each form of relief sought is a basic one that long pre-dates *Murthy* and applies in all cases, regardless of a case's specific facts, legal theories, or procedural posture. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press."); *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

---

[5] For example, a union member visa holder already lawfully present in the United States who sufficiently alleges that she is injured as a result of State's alleged social media accounts policy because she made her accounts public for the duration of the visa renewal process would at most be able to establish associational standing for her union to bring Claim 3 and a parallel APA claim based on this same injury. Plaintiffs argue that the Government "apparently conceded that Plaintiffs have standing to bring their APA claims" because they were not specifically mentioned in the Government's opening brief. Opp. 9. Not only is this not true, *see* Br. 14-15, but it makes no sense because Plaintiffs' constitutional claims and APA claims are premised on the same set of alleged organizational and associational injuries, which were addressed at length in the Government's motion. Plaintiffs did not plead APA-only injuries; rather, their APA claims are entirely derivative of their First Amendment claims.

**B. Plaintiffs Have Not Shown That Any Union Member Has a Sufficient Risk of Future Injury**

Plaintiffs also fail to establish associational standing under a pre-enforcement theory.

To begin, Plaintiffs concede that only a "subset" of their members could conceivably have standing under such a theory. Opp. 24. They also appear to concede that the results of their surveys are insufficient to establish injury under this theory, failing to discuss those at all. *See id.* at 24-25. Instead, Plaintiffs point to 12 of their 23 anonymous "Doe" union members vignettes and argue that these members have a credible fear of enforcement because they "expect to submit visa or USCIS applications in the near future" and have curtailed certain speech in response to the alleged CSP. *Id.* at 25. But as the Government argued in its opening brief, none of the vignettes provides information about the individual member's understanding of the nature or scope of the supposed CSP such that it is possible to discern whether a member's fear of enforcement is credible. Br. 22-23. And significantly, none of these subset members is currently applying for a visa or immigration benefit. *See* FAC ¶¶ 218-24, 234-36, 251, 253. Rather, most simply "anticipate[]" applying, in some cases without stating when and in others simply stating in the "foreseeable future." *See id.* ¶¶ 218-21, 234-36, 251, 253. Whether these members ever actually do apply remains to be seen. As a result, Plaintiffs have not alleged facts demonstrating that any union member faces a credible threat of enforcement that is "sufficiently imminent" to establish a pre-enforcement injury. *See Upsolve, Inc. v. James*, 155 F.4th 133, 139 (2d Cir. 2025).

**C. Plaintiffs Fail to Satisfy the Germaneness Requirement**

Plaintiffs also fail to satisfy the germaneness requirement of associational standing, which requires that each show that its "litigation goals [are] pertinent to its special expertise and the grounds that bring its membership together." *Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 149 (2d Cir. 2006) (cleaned up).

9

Plaintiffs argue that their ability to successfully pursue their missions as unions depends on the freedom of speech of their members. Opp. 22-23. They further argue (without support) that where "a government program interferes with a union's ability to organize at all, there can be no question that a challenge to that program is germane to the union's purposes." *Id.* at 22. But whether the challenged government program impedes the unions' missions goes to organizational standing, not germaneness. *See infra* Part III. Plaintiffs do not claim to have special competence in issues related to immigrants' rights, civil liberties, or the First Amendment. *See* Opp. 22. Instead of describing any connection they have to these topics, they simply refer to each union's constitution's "specific commitment to . . . its members' full and open democratic participation" and argue, without explanation, that their "respective constitutions are more than sufficient to demonstrate that this suit is germane to their interest." Opp. 23-24. But courts have found that this type of generalized "catchall" interest does not satisfy the germaneness requirement. *See Int'l All. of Theater Stage Emps. Loc. 927 v. Fervier*, No. 1:23-CV-04929-JPB, 2025 WL 747513, at *4 (N.D. Ga. Mar. 7, 2025). Plaintiffs are labor unions, not civil liberties or immigrants' rights organizations, and their members are not bound together by interest in those distinct subjects. Plaintiffs' litigation goals in this case are not germane to their areas of expertise and they therefore lack associational standing to bring any of their claims.

### III.    Plaintiffs Lack Organizational Standing

Plaintiffs have not demonstrated that they have organizational standing, either because the alleged CSP has impeded their ability to carry out their missions or because it has caused an involuntary and material diversion of resources. The recent decision in *American Association of University Professors v. Rubio* ("*AAUP II*"), which challenged some of the same agency actions at issue here, is instructive. That court held that plaintiff AAUP did not have organizational

standing because

> AAUP's demonstrated harms – deterred and diminished noncitizen participation in AAUP events and diverted resources from more typical core advocacy issues . . . to dealing with immigration law – fall within the Supreme Court's warning against permitting an organization to 'spend its way into standing simply by expending money to gather information and advocate against the defendant's action.'

*AAUP II*, 802 F. Supp. 3d 120, 180 (D. Mass. 2025) (quoting *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 394 (2024)). The same is true here as well.

First, Plaintiffs argue that their core missions have been impaired because union members have disengaged from various union activities as a result of the CSP. Opp. 28. Although Plaintiffs' survey results report that members are altering their online social media use primarily related to content related to Israel and Palestine or critical of the Trump administration, *see* FAC ¶¶ 273, 282, 288, Plaintiffs also allege that members are withdrawing from "participating more broadly in union activity . . . for fear that engaging in protests, union elections, labor organizing, or political organizing could be seen as engaging in speech or activity disfavored by the administration." *Id.* ¶ 292. Withdrawal with respect to this broad range of topics cannot be traced to the CSP, however, as such topics are not considered "disfavored views" based on Plaintiffs' definition of the CSP. *See id.* ¶¶ 27-29. And Plaintiffs have still not explained how members refraining from posting about the disfavored topics, *e.g.*, Israel/Palestine, harms their ability to "effectively advocate for their [members'] interests and represent them in their workplaces." *See id.* ¶¶ 273, 282, 288. Nor have Plaintiffs addressed the fact that many of their members have actually increased their engagement with the unions as a result of the supposed CSP. *See id.* ¶¶ 215, 247.

Second, the additional expenditures that Plaintiffs argue support a diversion-of-resources injury are quite limited, and far from material, particularly for large organizations like Plaintiffs. *See id.* ¶¶ 293-95. While Plaintiffs argue in their brief that each union was "forced" to expend

11

these resources, *see* Opp. 32, there are no facts in the FAC that suggest that the expenditures were involuntary or anything other than part of Plaintiffs' "decision to embark on categorically new activities" in response to the CSP, *see id.* ¶¶ 293-95. This is insufficient to show injury for standing purposes. *See Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 174 (2d Cir. 2021).

Unable to show that the alleged CSP impairs their organizational mission or caused an involuntary or material diversion of resources, Plaintiffs' attempt to establish standing through an organizational theory fails.

## CONCLUSION

Based on the foregoing and its opening brief, the Government respectfully requests that the Court grant the motion to dismiss and dismiss this case for lack of jurisdiction.

Dated: May 14, 2026

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By:    */s/ Jennifer Jude*
JENNIFER JUDE
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Phone: (212) 637-2663
E-mail: jennifer.jude@usdoj.gov

12

**Certificate of Compliance**

The above-named counsel hereby certifies that this memorandum contains 3,978 words and complies with Local Civil Rule 7.1(c), assuming that such rule is modified by this Court's Individual Rule 2(C) to impose no length limitation. *See* ECF No. 64 (letter requesting clarification of interaction between Individual Rule 2(C) and Local Civil Rule 7.1(c)).