July 20, 2026

**Via ECF**
Hon. Alvin K. Hellerstein
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: Supplemental Authority Relevant to the Government's Motion to Dismiss the First Amended Complaint in *Int'l Union, et al. v. U.S. Dep't of State, et al.*, 25 Civ. 8566 (AKH)

Dear Judge Hellerstein:

The undersigned represent Plaintiffs in the above-captioned action. We write to inform the Court that the U.S. District Court for the District of Columbia (D.D.C.) issued the attached decision in *Coalition for Independent Technology Research v. Rubio*, No. 26-cv-815 (JEB) (D.D.C.) ("*CITR*") on July 14, 2026. That decision further refutes arguments pressed by Defendants in this case ("the Government") in support of their pending motion to dismiss the First Amended Complaint.

## I. Existence and Scope of the Challenged Surveillance Program

In its pending motion to dismiss, the Government in this case argued that Plaintiffs are not challenging a single unified surveillance program (labeled in the First Amended Complaint as the Challenged Surveillance Program or "CSP") but rather "a compilation of various public statements, media reports, and a handful of enforcement actions that concern different defendant agencies with different responsibilities who use different technologies for different purposes." ECF No. 52 at 8. The *CITR* court rejected a nearly identical argument pressed by the Government. The *CITR* court found that the challenged agency action is best understood as a "single policy aimed at noncitizens" that "discriminates on the basis of viewpoint" and chills protected "speech, publication, petitioning, and expressive association." *CITR*, slip op. at 16, 34–35.

The *CITR* court measured agency action by considering "reasoning that is fairly stated by the agency" at the time, not "post hoc rationalizations by agency counsel." *Id*. at 13 (quoting *Williams Gas Processing — Gulf Coast Co. v. FERC*, 373 F.3d 1335, 1345 (D.C. Cir. 2004)). In *CITR*, the responsible agencies and officials invoked the policy by name, applied its substantive criteria, identified organization members as its targets, and announced the visa and removal actions together. The Government's public explanations are strongly probative of a policy's scope and whether government officials believed they were implementing it. Slip op. at 13–15, 38. Enforcement actions are also probative of the scope of a government policy because they are "examples of the policy at work." *Id*. at 38. Moreover, like the CSP here, the *CITR* court recognized that the policy expanded over time. *Id*. at 14.

## II. Organizational Standing

The Government argued in its motion to dismiss that Plaintiffs lack organizational standing to contest the CSP. ECF No. 52 at 18–27. In *CITR*, the court rejected a similar argument.

CITR successfully showed that the organization's operations were impaired and that "the threat driving such impairment is real and not conjectural." *CITR*, slip op. at 20. CITR, alleging an organizational standing theory, challenged a policy that rendered its noncitizen members subject to visa revocation, exclusion, and deportation. The court found that members' self-censorship, withdrawals, and refusal to attach names to the organization's website and public reports, and partake in events, was a "foreseeable result" of the policy that directly targeted people engaging in the kind of work CITR does. *Id.* at 18–20. The court found CITR had standing because the challenged policy "severs the very tie between organization and member that CITR exists to maintain, and it reflects a direct conflict between the [Defendants'] conduct and the organization's mission." *Id*. at 19 (quotation marks and citation omitted).

Here, the CSP burdens Plaintiffs' members' speech and organizational rights in the exact same way. Like CITR, the Plaintiff unions "exist[] to convene, sustain, and build" the community of United-States-based workers, including lawfully present non-citizen members. *See id.* at 18. And like the policy at issue in *CITR*, the CSP renders members who continue to engage in certain relevant speech "subject to visa revocation, exclusion, and deportation." *See id.* Plaintiffs' members' diminished participation, voting, and communication are a similarly "foreseeable result" of the CSP, and adversely impact the Plaintiff unions' ability fulfill their mission of advocating and representing member interests in the workplace. *See id*. Thus, the CSP also "severs the ties between organization and member." *See id.* at 19.

*CITR* also supports Plaintiffs' organizational standing under the diversion of resources theory. The *CITR* court found that the May 2025 policy caused CITR to respond out of necessity by diverting funds and staff time to "counteract these harms and preserve operations." *Id*. at 20. These expenditures were "not litigation costs or freestanding advocacy expenses, but diversions from existing programs to counteract ongoing conduct." *Id*. at 21. The expenses incurred were "the price of keeping impaired operations running" by reallocating funds and staff time normally reserved for bargaining and direct member counseling, which speak to the core functions of the Plaintiff organization. *Id*. That an organization "voluntarily diverts resources to address such disruptions does not mean it cannot suffer an injury sufficient to confer standing," as the expenditures counteracted a direct impairment rather than merely advocating against a disfavored policy. *Id*. (quoting *Equal Rts. Ctr. v. Post Props., Inc*., 633 F.3d 1136, 1140 (D.C. Cir. 2011)).

Here, the CSP caused Plaintiffs' members to take entirely predictable measures including forgoing participation in union activities, directly impeding Plaintiffs' ability to carry out their missions. Plaintiffs have been forced to expend and divert resources away from core union activities to protect members and adequately advise them on the CSP.

## III. Subject-Matter Jurisdiction

The Government argued in its motion to dismiss that §§ 1252(g), 1252(b)(9), and 1252(f) of the Immigration and Nationality Act bar this Court from adjudicating the case. ECF No. 52 at 15–18. The *CITR* court rejected each of these arguments, consistent with Plaintiffs' arguments here.

As to § 1252(g), the *CITR* court concluded that the provision did not apply because it reaches "only… three discrete actions:" decisions to "commence proceedings, adjudicate cases, or execute removal orders." As such, the provision does not extend to "all claims arising from deportation proceedings," and the Supreme Court has previously rejected as "implausible" any reading that would give the provision a "general jurisdictional" sweep. *CITR*, slip op. at 24–25 (quoting *Reno v. American-Arab Anti-Discrimination Committee (AADC*), 525 U.S. 471, 482 (1999)).

As to §1252(b)(9), the *CITR* court emphasized that suits challenging "an agency policy, not any action taken to remove a particular member" do not "arise[] from" removal decisions and thus do not trigger the jurisdiction-stripping provision. *CITR*, slip op. at 27–29. "The prospect that the policy may later contribute to some noncitizen's removal does not transform a challenge to the policy into the review of an order of removal." *Id.* at 29.

Finally, the *CITR* court concluded that the relief limitation in § 1252(f)(1) "does not speak to the Court's *jurisdiction* to hear CITR's claims." *Id*. at 31 (emphasis in original).

In short, here, too, Plaintiffs are not asking the court to review removal proceedings. Plaintiffs challenge the legality of the CSP. None of the provisions Defendants invoke deprive this Court of subject-matter jurisdiction.

Dated: July 20, 2026

Sincerely,

/s/ Sadaf Hasan
MUSLIM ADVOCATES
Sadaf Hasan*
Collin Poirot
1032 15th Street N.W. # 362
Washington, D.C. 20005
(202) 655-2969
sadaf@muslimadvocates.org
collin@muslimadvocates.org

/s/ Sophia Cope
ELECTRONIC FRONTIER FOUNDATION
David Greene
Sophia Cope
Elizabeth Femia
Saira Hussain
815 Eddy Street
San Francisco, CA 94109
(415) 436-9333
davidg@eff.org
sophia@eff.org
lfemia@eff.org
saira@eff.org

/s/ John Langford
MEDIA FREEDOM & INFORMATION
ACCESS CLINIC
Anthony Cosentino, *student*
Nick Jones, *student*
Raymond Perez, *student*
Tess Solomon, *student*
Grace Chisholm, *student*
Stacy Livingston
John Langford
P.O. Box 208215
New Haven, CT 06511
(203) 432-2366
stacy.livingston@ylsclinics.org
john.langford@ylsclinics.org

*Pro hac vice* application forthcoming